# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# EASTERN DIVISION
# CIVIL ACTION NO. _____

| | |
|---|---|
| LYNDA POPE, | )<br>)<br>) |
| Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| FIRST PROTECTIVE<br>INSURANCE COMPANY, | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

**COMPLAINT**
**(JURY TRIAL DEMANDED)**

**NOW COMES** Plaintiff Lynda Pope ("Ms. Pope" or "Plaintiff"), by and through undersigned counsel, to complain of the Defendant by alleging and saying as follows:

## PARTIES

1. Plaintiff is a citizen and resident of Carteret County, North Carolina and is the owner of real property located at 418 Shoreline Dr., Cedar Point, North Carolina 28584 (the "Property") that was damaged on or around September 14, 2018 as a result of Hurricane Florence.

2. Defendant First Protective Insurance Company ("First Protective") is a Florida Corporation with a principal office and place of business in Lake Mary, Florida. Upon information and belief, at all times relevant to this Complaint, Defendant was duly authorized to transact and was transacting business in North Carolina.

## JURISDICTION & VENUE

3. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as there is complete diversity of citizenship, and the amount in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

4. The Defendant is subject to personal jurisdiction in this District.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events, acts, or omissions giving rise to the underlying claim and questions surrounding coverage under the policy of insurance at issue occurred there.

## FACTUAL ALLEGATIONS

6. For the period of December 8, 2017 through December 8, 2018, Plaintiff was an insured under a Homeowners Policy bearing policy number FPHW-000002592 (hereinafter, the "First Protective Policy" or "Policy") (**Exhibit A**).

7. The First Protective Policy was issued by Defendant and provided insurance coverage for Plaintiff's Property.

8. The First Protective Policy contains a Property Coverages Section ("Coverage D"), which provides, in relevant part, as follows:

**SECTION I – PROPERTY COVERAGES**

…

**D. Coverage D – Loss of Use**

The limit of liability for Coverage D is the total limit for coverages in **1.** Additional Living Expense, **2.** Fair Rental Value and **3.** Civil Authority Prohibits Use below.

**1. Additional Living Expense**

If a loss covered under Section **I** makes that part of the "residence premises" where you reside not fit to live in, we cover any necessary increase in living expenses incurred by you so that your household can maintain its normal standard of living.

Payment will be for the shortest time required to repair or replace the damage or, if you permanently relocate, the shortest time required for your household to settle elsewhere.

**2. Fair Rental Value**

If a loss covered under Section **I** makes that part of the "residence premises" rented to others or held for rental by you not fit to live in, we cover the fair rental value of such premises less any expenses that do not continue while it is not fit to live in.

Payment will be for the shortest time required to repair or replace such premises.

9. The First Protective Policy contains a Duties After Loss provision ("Duties After Loss provision"), which provides, in relevant part, as follows:

**SECTION I – CONDITIONS**

…

**C. Duties After Loss**

In case of a loss to covered property, we have no duty to provide coverage under this policy *if the failure to comply with the following duties is prejudicial to us*. These duties must be performed either by you, an "insured" seeking coverage, or a representative of either:

. . .

5. Cooperate with us in the investigation of a claim;

. . .

8. Send to us, w*ithin 60 days after our request*, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

. . .

g. Receipts for additional living expenses incurred and records that support the fair rental value loss. . .

(emphasis added).

10. The First Protective Policy contains an extended coverage-dwelling provision,

("Extended Coverage" or "HO 32 20 Coverage") which provides, in relevant part, as follows:

> **SPECIFIED ADDITIONAL AMOUNT OF INSURANCE FOR COVERAGE A – DWELLING – NORTH CAROLINA**
>
> . . .
>
> **B.** If there is a loss to the building insured under Coverage **A** that exceeds the Coverage **A** Limit Of Liability shown in the Declarations, for the purpose of settling that loss only:
>
>   1. We will provide an additional amount of insurance, up to the amount described in the Schedule above[.]

11. The First Protective Policy contains an appraisal provision ("Appraisal provision"), contained in Endorsement HS 00 03 02 15, which provides, in relevant part, as follows:

> **SECTION I – CONDITIONS**
>
> . . .
>
> **F.** **Appraisal**
>
>   If you and we fail to agree on the value or amount of any item or loss, either may demand an appraisal of the loss. In this event, each party will choose a competent and disinterested appraiser within 20 days after receiving a written request from the other. The two appraisers will choose a competent and impartial umpire. If they cannot agree upon an umpire within 15 days, you or we may request that a choice be made by a judge of a court of record in the state where the "residence premises" is located. The appraisers will separately set the amount of loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will set the amount of loss. Each party will:
>
>   1. Pay its own appraiser; and
>   2. Bear the other expenses of the appraisal and umpire equally.

12. The First Protective Policy contains a Loss Payment provision ("Loss Payment provision"), contained in Endorsement HS 00 03 02 15, which provides, in relevant part, as follows:

**SECTION I – CONDITIONS**

. . .

**J.    Loss Payment**

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. We will pay within 60 days after the amount is finally determined.

This amount may be finally determined by:

a.   Reaching an agreement with you;
b.   Entry of a final judgment; or
c.   The filing of an appraisal award with us.

13.    Loss adjustment of the Property began on or around September 16, 2018 when Plaintiff transmitted a Claim Notification to Defendant.

14.    Thereafter, Plaintiff engaged her contractor to inspect the Property and produce an estimate for repairs to the Property for damages caused by Hurricane Florence. Defendant disagreed with the estimate submitted by Plaintiff's contractor.

15.    On March 15, 2021, Defendant sent a letter to Plaintiff, invoking the Appraisal provision. The letter stated:

> This letter is sent to advise [Plaintiff] that [Defendant] is invoking Appraisal as provided by the conditions of your policy for your *entire insurance claim* in the above-referenced claim number. It is [Defendant]'s understanding that the parties cannot agree on the amount of your loss based upon [Defendant]'s disagreement with estimate submitted by your contractor…

(emphasis added). The letter also informed Plaintiff that Defendant had selected Darienne Breazeale with Integrity Adjusters ("Appraiser Breazeale") as its appraiser. A true and accurate copy of the Appraisal Demand Letter sent by Defendant is attached hereto as **Exhibit B**.

16.    On or around March 16, 2021, Plaintiff sent Defendant her Appraiser Appointment Form, selecting Ron Hicks of StormPro Public Adjusters ("Appraiser Hicks") as her appraiser.

17. Thereafter, Appraiser Breazeale and Appraiser Hicks performed their inspections of the Property, exchanged several estimates, and engaged in correspondence concerning adjustment of the Claim to come to an agreement. Over the course of the appraisal process, Plaintiff paid all the costs and expenses of Appraiser Hicks, as required by the Appraisal provision.

18. On or around April 20, 2021, Appraiser Breazeale produced her final estimate of Plaintiff's losses in her capacity as Defendant's appraiser. The estimate provides for losses under Coverage A, Coverage A HO 32 20, Fungi/Mold, Coverage C, and Coverage D, including a summary and breakdown of the amounts estimated as Plaintiff's losses under Coverage A HO 32 20 and Coverage D. A true and accurate copy of Appraiser Breazeale's Final Amount of Loss is attached hereto as **Exhibit C**.

19. On or around on April 20, 2021, Appraiser Breazeale and Appraiser Hicks came to an agreement as to the amount of loss for Plaintiff's *entire claim*, as outlined in Appraiser Breazeale's Final Amount of Loss estimate. *See* **Exhibit C**.

20. Appraiser Hicks prepared an Appraisal of Insurance Claim – Award Form (the "Award Form") (**Exhibit D**), which sets out the amount of loss agreed upon under Coverage A, Coverage A HO 32 20, Fungi/Mold, Coverage C, and Coverage D. Both appraisers intended to execute the Award Form on April 21, 2021.

21. However, on or around April 21, 2021, Appraiser Hicks became aware that Defendant instructed Appraiser Breazeale to abstain from participating in the appraisal. Specifically, only hours after Appraiser Breazeale received confirmation that the Final Amount of Loss she prepared was accurate and hours before she intended to sign the Appraisal Award, Frontline texted her stating, "Don't sign the award on Pope yet." Upon information and

belief, Defendant thereafter removed Appraiser Breazeale from the file, causing undue influence and interference with the appraisal panel.

22. To formalize the agreement and verify the award without delay, Appraiser Hicks engaged the third-party Umpire.

23. In connection with that process, on May 4, 2021, Plaintiff contacted Defendant to determine whether it agreed that there was a finalized appraisal award (although the form was not fully executed) or to, alternatively, initiate the Empty Chair Process.

24. After additional delay on the part of Defendant to respond to Plaintiff's inquiry, on May 7, 2021, Defendant responded: "[Defendant] agrees that the appointed appraisers set an award and the validity of that award is not being challenged." That "agreed upon" amount became "the amount of loss" under the Policy. The parties did not further pursue the Empty Chair Process.

25. This confirmation from Defendant bound the parties to the agreed amount of loss as follows:

| Description of Coverage Appraised | Award Amount | | Appraised Answer "Yes" or "No" | | Reason NOT Appraised |
|---|---|---|---|---|---|
| | ACV Amount | RCV Amount | No | Yes | Reason |
| Dwelling | $ 763,251.73 | $ 798,948.05 | | Yes | |
| Dwelling HO3220 | $ 159,520.88 | $ 162,641.48 | | Yes | |
| Dwelling HO3232 | $ 1,177.02 | $ 1,234.17 | | Yes | |
| Dwelling Code | | | No | | *See Note |
| Dwelling Code | *Unable to appraise this coverage until after work begins | | | | |
| Dwelling Debris | | | No | | **See Note |
| Dwelling Debris | **Debris removal left open for the removal of remaining inteiror finishes | | | | |
| Other Structures | | | No | | not applicable |
| Personal Property | $ 234,614.04 | $ 234,614.04 | | Yes | |
| Loss of Use | $ 159,800.00 | $ 159,800.00 | | Yes | |

*See* **Exhibit D**.

26. The total agreed amount of loss is **$1,357,237.74**.

27. On June 8, 2021, Defendant authored a letter detailing its alleged payout obligations pursuant to the Appraisal Award (**Exhibit E**). This letter misrepresents what is presently due and owing.

28. Certain prior payment amounts, as outlined in the letter, are inaccurate. Specifically, the prior payments for Loss of Use misstate payments in the amount of $16,900, and Defendant has not otherwise explained the difference.

29. Moreover, Defendant has failed to pay the full amount of loss, as agreed upon by the appraisers and adopted by Defendant. Specifically, the letter states that Defendant was paying Plaintiff the appraisal amounts for Coverage A/Dwelling, Fungi/Mold, and Coverage C, but that it was refusing to pay her the appraisal award amount under Coverage A HO 32 30 and Coverage D. However, the agreed upon amount of loss includes a total payout of $162,641.48 for extended coverage under HO 32 20 and $39,860.00 for Loss of Use (Coverage D). In total, Defendant has failed to pay Plaintiff $202,507.48, which is currently due and owing. Defendant has also withheld depreciation in the amount of $35,696.32.

30. Defendant is obligated to pay the entire amount of loss once the appraisal process has concluded for *the entire insurance claim*. Defendant cannot further negotiate or withhold payment of the full amount of loss. The amount of loss is due in full within 60 days, as outlined in the Policy. Defendant has failed to pay the full amount of loss.

31. Defendant understands its obligation under the Policy once an agreed upon amount becomes the amount of loss for the entire insurance claim. Indeed, Defendant has been subject to litigation concerning its failure to make full payment for the amount of loss, including for amounts due under the Loss of Use provision, under nearly these exact circumstances. *See generally First Protective Ins. Co. v. Rike*, 2021 U.S. Dist. LEXIS 16153, 2021 WL 296153 (granting judgment

on the pleadings due to Defendant's failure to pay the full amount of loss, included Loss of Use, within 60 days after the amount was agreed upon) (**Exhibit F**). Amounts awarded under HO 32 20 are no different.

32. In response to Defendant's failure to pay the full amount of loss, Plaintiff prepared, at her own expense, a Sworn Statement in Proof of Loss (the "Sworn Proof of Loss") (**Exhibit G**), which was sent to Defendant. Supporting documentation was attached thereto, including the Appraisal Award and Defendant's correspondence confirming validity of the same.

33. This notwithstanding, Defendant has still failed to make proper payment of the Claim or to do anything further to adjust the Claim. Instead, Defendant has compelled the insured, the Plaintiff, to file the instant litigation.

34. Without payment of the Claim, and as a result of Defendant's delay tactics and repeated, and unreasonable denials, Plaintiff has incurred, and will continue to incur, significant expenses, property depreciation, attorney's fees, litigation costs, and other expenses and damages.

35. Defendant has failed to provide a reasonable basis for its failure to pay the amounts set forth in Plaintiff's Sworn Proof of Loss or for its unreasonable positions taken in the adjustment of Plaintiff's Claim.

36. At all times throughout the adjustment of the Claim, Plaintiff complied as promptly as possible with every request made by Defendant for information regarding the Claim and has otherwise fulfilled all conditions precedent and contractual obligations under the Policy prior to the filing of this lawsuit.

37. Plaintiff has done everything in her power to mitigate damages and to prevent further damages because of the Property's compromised state.

# FIRST CLAIM FOR RELIEF
## Breach of Contract

38. Plaintiff realleges and incorporates the preceding allegations as if fully set forth herein.

39. The Policy constitutes a contract between Plaintiff and Defendant.

40. At the time the First Protective Policy was entered into, Defendant's bargaining power substantially outweighed Plaintiff's bargaining power, such that Defendant dictated the terms of the First Protective Policy and was free to alter or reject the Appraisal provision and/or the Loss Payment provision contained within the contract.

41. Defendant breached the First Protective Policy in that it:

   a. Intentionally interfered with the conclusion of the appraisal process and the appraisal panel;

   b. Disputed the validity of the contractually binding Award after it invoked the Appraisal provision and participated without objection in the appraisal procedures;

   c. Purposely sought to invalidate the contractually binding Appraisal Award by purporting that Plaintiff failed to fulfill contractual duties she was not obligated to fulfill, which Defendant never asked her to perform, and performance of which Defendant waived when it invoked the Appraisal provision;

   d. Refused to abide by the Award as a final determination of the value of Plaintiff's losses;

   e. Attempted to retroactively nullify portions of the contractually binding Award, which it originally sought, because it is unhappy with the amount of the Award;

  f. Failed to pay Plaintiff the amount of her loss under Extended Coverage and Coverage D within sixty (60) days after the amount of losses under both were "finally determined," as required by the Loss Payment provision;

  g. Otherwise breached the terms of the First Protective Policy as Plaintiff will demonstrate through discovery and/or at trial.

  42. As a proximate and foreseeable result of Defendant's breach of the First Protective Policy and Appraisal Award, Plaintiff has been damaged in an amount in excess of $75,000.

  43. Plaintiff is entitled to prejudgment interest at the legal rate of 8% from the date of breach until paid.

## SECOND CLAIM FOR RELIEF
### Breach of the Covenant of Good Faith and Fair Dealing

  44. Plaintiff realleges and incorporates the preceding allegations as if fully set forth herein.

  45. Defendant's conduct herein was in bad faith and in violation of its covenant of good faith and fair dealing implied by law into the First Protective Policy and the Appraisal Award.

  46. A nonexclusive list of Defendant's conduct that illustrates its bad faith includes:

  a. Upon information and belief, willingly invoking the Appraisal provision and entering into appraisal with an intention not to perform its obligations under the Appraisal provision and Payment of Loss provision if it was unhappy with the Award amount;

  b. Expressly invoking the Appraisal provision to resolve Defendant's "entire insurance claim," forcing Plaintiff into an expensive appraisal process, only to contend that payment thereunder was premature as to portions of the Claim;

c. Intentionally interfering with the conclusion of the appraisal process and the appraisal panel;

d. Denying knowledge, following issuance of the Award pursuant to the Appraisal provision, that the Appraisal process was intended to determine the value of *all* Plaintiff's losses, including those under Extended Coverage and Coverage D;

e. Attempting to collaterally attack the appraisal and the Award entered pursuant to the Appraisal provision in a manner it knows is neither legally nor factually justified;

f. Denying Plaintiff the benefit of her bargain under the First Protective Policy by alleging Plaintiff failed to fulfill contractual duties which she was not obligated to perform, which Defendant never asked her to perform, and performance of which Defendant waived when it invoked the Appraisal provision;

g. Intentionally and maliciously refusing to abide by the sixty (60) day timeframe for payment of losses set out by the Loss Payment provision.

47. As a proximate result of Defendant's breach of its covenant of good faith and fair dealing, Plaintiff has been damaged in an amount in excess of $75,000.00.

### THIRD CLAIM FOR RELIEF
**Unfair Claims Settlement Practices**
**And Unfair & Deceptive Trade Practices**

48. Plaintiff realleges and incorporates the preceding allegations as if fully set forth herein.

49. The conduct of Defendant constitutes unfair claims settlement practices that violate one or more of the subparts of N.C.G.S. § 58-63-15(11), and Unfair & Deceptive Trade Practices in violation of Chapter 75 of the North Carolina General Statutes, including, but not limited to:

a. Misrepresenting pertinent facts or insurance policy provisions relating to the procedures set out by the Appraisal provision;

b. Failing to acknowledge and act reasonably promptly upon communications regarding the Award and the value of loss under Extended Coverage and Coverage D;

c. Refusing to pay the Award's amount for losses under Extended Coverage and Coverage D of the First Protective Policy, despite the fact that the First Protective Policy clearly mandated that the Award was a final determination of the value of such losses;

d. Failing to adopt and implement reasonable standards for the prompt investigation and adjustment of claims arising under its policies and for resolution of those claims under the Appraisal provision(s) of its policies, including the First Protective Policy;

e. Purposely refusing to abide by its own standards and procedures for prompt investigation and adjustment of claims arising under its policies and attempting to manipulate those procedures for its own benefit;

f. Not attempting in good faith to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear;

g. Compelling [the] insured to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amount due by the contractually binding Award by completely refusing to pay the amount granted by the Award under Extended Coverage and Coverage D;

h. Attempting to settle a claim for less than the amount to which a reasonable man would have believed he was entitled;

i. Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for offering of a compromise settlement;

j. Purposely failing to act in good faith to effectuate prompt, fair, and equitable settlement of the Claim in which liability had become reasonably clear based on the Award and the First Protective Policy;

k. Ignoring the Sworn Proof of Loss Statement provided by the Plaintiff and the documents evidencing the same shared contemporaneous and subsequent thereto;

l. Failing to provide any explanation or communication to Plaintiff regarding why the evidence provided by Plaintiff was insufficient to alter Defendant's payout obligation, despite the fact that such evidence overwhelmingly showed that Defendant was obligated to pay the full loss amount after a finalized appraisal process; and

m. Other particulars as will be adduced through further investigation, discovery, or at trial.

50. More particularly, with Defendant's actual and/or constructive knowledge of Plaintiff's damages and coverage therefore, Defendant unfairly and unlawfully failed to promptly investigate, adjust and pay the Claim in violation of North Carolina law, N.C.G.S. § 58-63, and Chapter 75 of the North Carolina General Statutes. The factually specific statutory violations, in part, are outlined above and said violations, in part, correspond to violations of provisions of North Carolina law found from N.C.G.S. § 58-63-15(11)(a) through N.C.G.S. § 58-63-15(11)(n).

51. Defendant's above-described conduct, in violation of N.C.G.S. § 58-63-15(11), is a per se violation of N.C.G.S. § 75-1.1.

52. The conduct of the Defendant directly violates N.C.G.S. § 75-1.1 in that its acts were unfair, unscrupulous, immoral, deceptive, oppressive, and substantially injurious to Plaintiff and was an inequitable assertion of its power and position over Plaintiff under the circumstances.

53. The above-described conduct of the Defendant was not based upon honest disagreement or innocent mistake.

54. The above-described conduct of Defendant was committed intentionally, willfully, and with malice toward Plaintiff.

55. Defendant's actions were accomplished by aggravating or outrageous conduct, including malice, oppression, and reckless or wanton disregard of Plaintiff's rights.

56. Defendant's unfair and deceptive trade acts or practices were in or affecting commerce.

57. As a proximate result of Defendant's unfair claim settlement practices and unfair and deceptive trade acts and practices, Plaintiff has suffered damages in an amount equal to the benefits currently due under the Policy and Award as well as additional damages to be proven at trial.

58. Pursuant to N.C.G.S. § 75-16, Plaintiff is entitled to treble its damages.

59. Pursuant to N.C.G.S. § 75-16.1, Plaintiff is entitled to an award of reasonable attorney's fees.

60. Plaintiff's damages are not presently fully capable of admeasurement, but in any event far exceed this Court's jurisdictional threshold of $75,000.

**WHEREFORE**, Plaintiff pray that the Court enter Judgment as follows:

1. That Plaintiff has and recover of Defendant a sum equal to the amount due under the First Protective Policy and Award, as well as consequential, incidental, compensatory, and other contractual damages to be proven at trial;

2. That Plaintiff be awarded treble her damages as provided by N.C.G.S. §§ 75-1.1 and 75-16, or at Plaintiff's election, punitive damages;

3. That the Court tax prejudgment interest on the award and post judgment interest on the entire judgment as permitted by law;

4. That the Court tax the costs of this action, including Plaintiff's attorney's fees as provided by the common law and the North Carolina General Statutes, including but not limited to Chapter 75 and 58 thereof, against Defendant;

5. That all issues of fact be tried by a jury; and

6. Such other and further relief as the Court may deem just and proper.

This the 10th day of August, 2021.

**HOWARD, STALLINGS, FROM,
ATKINS, ANGELL & DAVIS, P.A.**

By: /s/ Robert H. Jessup
Robert H. Jessup (State Bar No. 42945)
5410 Trinity Road, Suite 210
Raleigh, North Carolina 27607
Telephone: (919) 821-7700
rjessup@hsfh.com
*Attorney for Plaintiff*